UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                    *Plaintiff,*

                                                        **NOTICE OF MOTION**
              vs.                                       Case No.:  20-cr-150-LJV-HKS

DANIEL RODRIGUEZ,

                                    *Defendant.*

_____

S I R S:

              COMES NOW the defendant, DANIEL RODRIGUEZ, by and through his

attorneys, LIPSITZ GREEN SCIME CAMBRIA LLP, JUSTIN D. GINTER, ESQ., attorneys for

and upon the annexed affidavit of JUSTIN D. GINTER, ESQ., hereby moves this Court for the

relief set forth in the affidavit annexed hereto and made a part hereof together with such other and

further relief as to this court deems just and proper.

DATED:  Buffalo, New York
              January 15, 2021

                                        Respectfully submitted,

                                        LIPSITZ  GREEN  SCIME  CAMBRIA,  LLP.
                                        JUSTIN D. GINTER, ESQ.
                                        *Counsel for Defendant, DANIEL RODRIGUEZ*
                                        Office and Post Office Address
                                        42 Delaware Avenue
                                        Buffalo, New York 14202
                                        (716) 849-1333
                                        jginter@lglaw.com

TO:    MICHAEL J. ADLER, ESQ.
         ASSISTANT UNITED STATES ATTORNEY
         138 Delaware Avenue
         Buffalo, New York 14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

DANIEL RODRIGUEZ, et al,

*Defendants.*

_____

**AFFIDAVIT**

Case No.:  20-cr-150-LJV-HKS

STATE OF NEW YORK        )
COUNTY OF ERIE           )

    JUSTIN D. GINTER, ESQ., being duly sworn, deposes and says:

    1.  I am an attorney at law duly licensed to practice within the courts of the State of New York and in this Court.  I represent the Defendant, Daniel Rodriguez, and as such are fully familiar with the facts and circumstances of the instant case.

    2.  This affidavit is made pursuant to the Federal Rules of Criminal Procedure and in support of various forms of pre-trial relief.

# I
## DISCLOSURE OF GRAND JURY TRANSCRIPTS

    3.   The grand jury is a check against unfounded prosecutions - - a bulwark between the accuser and the accused.  *Wood v. Georgia*, 370 US 375, 390 (1962); *United States v. Williams*, 504 US 36, 47 (1992) (grand jury is a "buffer" or referee between the government and the People.) The grand jury's function is not only to determine whether probable cause exists to charge an offense; it is also to protect from prosecution from whom criminal charges are unfounded.

    4.  It is not unusual for courts to order dismissal of an indictment based at least in part on erroneous or misleading legal instructions.  *United States v. Peralta*, 763 F.Supp, 12.  Rule

6(e)(3)(E)(ii) authorizes a court to compel disclosure of grand jury transcripts where the defendant sufficiently shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. Erroneous legal instructions can constitute such a ground, provided that there is a graved out that the decision to indict was free from such substantial influence of the defect. *Bank of Nova Scotia v. United States*, 487 US 250, 256 (1988). A court called upon to determine whether grand jury transcripts should be released as substantial discretion in ordering disclosure so that a defendant may pursue a motion to dismiss. *United States v. Rodriguez–Torres*, 570 F.Supp. 2d 237, 241 (DPR, 2008); *United States v. McMahon*, 938 F2d 1501, 1504 (1st Cir., 1991).

## II
## MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL

5.      Pursuant to the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976), *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995), Mr. Rodriguez hereby moves the Court for the immediate disclosure of all exculpatory and/or impeaching material in the prosecution's possession, custody or control or which is otherwise known to the prosecution, including, but not limited to, the following:

a.      Any and all information and/or material which tends to exonerate Mr. Rodriguez or which tends to show that he did not knowingly commit any offenses alleged in the indictment;

b.      Any and all evidence which tends to impeach the credibility of any prospective government witness (including co-defendants), including, but not limited to:

c.      Any and all records or information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to, relevant "rap sheets" of each witness the prosecutor intends to call at trial;

d.     Any and all records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including co-defendants, the prosecutor intends to call at trial;

e.     Any and all allegations of prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including co-defendants, the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should have reason to know;

f.     Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness, including co-defendants, or on behalf of a relative of any such witness or co-defendant, the government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness, or relative of any witness, at any future time.  Such "consideration" refers to anything which arguably could be of value or use to a witness, or relative of the witness, including but not limited to:  formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, disciplinary or other matter involving the state or federal government or agency thereof, any association, (including legal association), any other authority, or other parties; civil, criminal or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees; provisions of food, clothing, transportation, legal services, alcohol or drug related rehabilitation services or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness' or the relative's cooperation; recommendations concerning licensing, certification or registration;  recommendations concerning federal aid or benefits; promises to take affirmative action to help the status of the witness or co-defendant, or relative of the witness or co-defendant, in a profession, business or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness, or a relative of the witness; and anything else which arguably could reveal any interest, motive or bias of the witness in favor of the prosecution or against any defendant or which could act as an inducement to testify or to color his testimony;

g.     Any and all statements -- formal and informal, oral or written -- by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or

4

outcome of any government action -- state or federal, civil or criminal -- or licensing, matters against the witness, including co-defendants, or anyone related by blood or marriage to the witness;

h.    Any statements read or made by the government to the departments of pre-trial services or probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

i.    Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, or relative of such witness or co-defendant, and the state or federal government, any agency thereof or any regulatory body or association or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

j.    A list of any and all requests, demands or complaints made of the government by any witness, including co-defendants, which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness or co-defendant for favorable governmental action in his behalf or on behalf of a relative of such witness (regardless of whether or not the government has agreed to provide any favorable action);

k.    With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, copies of all indictments, complaints or informations brought against such person by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and, state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken.  If the government does not have copies of all indictments, complaints, or proceedings, state the dates and places of arrests, hearings, indictments, and information, the charges brought, and the disposition of those charges or matters so far as it is known to the government;

l.      With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have not or will not be brought because the witness is cooperating with or has cooperated with the government, or for any reason.  Include copies of all memoranda of understanding between the government and its witnesses, whether by way of a letter to the attorney for a witness or otherwise;

m.      Any material not otherwise listed which reflects or evidences the motivation of any witness and/or co-defendant either to cooperate with the government or any bias or hostility against any defendant; the existence and identification of each occasion on which a witness has testified before any court, grand jury, administrative, regulatory, disciplinary body or other association, or otherwise officially narrated herewith, in the investigation, the indictment or the facts of this case, and any testimony, statements or documents given by the witness regarding same;

n.      All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings of which the government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any person has been given, regarding the misconduct, criminal acts or bad acts of any witness the government intends to call at the trial of this action;

o.      Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns, made or executed by any potential prosecution witness  or co-defendant in the trial in this action, which the prosecution knows or through the exercise of reasonable diligence should have reason to know, is false;

p.      Any and all records pertaining to any civil lawsuits, arbitration proceedings or other proceedings between any defendant and any witness, or any company with which any defendant or any government witness may have been affiliated, including, without limitation, records or statements pertaining to the investigation, conduct and disposition of such litigation;

q.      Copies of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness and/or co-defendant the prosecutor intends to call at trial which

may arguably affect the witness' credibility or his ability to perceive, relate or recall events;

r.    All documents and other evidence regarding drug or alcohol usage and/or dependency by any individual the government intends to call as a witness at trial, including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program;

s.    Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness and/or co-defendant which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

t.    Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness and/or co-defendant, whether or not such request was granted;

u.    The same records and information requested in items "(a)" through "(t)" with respect to each non-witness declaring whose statements will be offered in evidence at trial pursuant to Fed. R. Evid. 806;

v.    Copies of any and all records of law enforcement agencies reflecting intradepartmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

w.    Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards or recognition or any kind, or requests for any commendations, awards or recognition of any kind made to or by any government agent or law enforcement officer for any work, action or conduct in connection with the investigation and prosecution of this case;

x.    The name and address and written or oral statements made by any person, including co-defendants, with knowledge and information concerning the events charged in the indictment and whose version of the same events is contrary to, or non-supportive of, the accusations set forth in the indictment;

y.    The name and address and any written or oral statement made by any persons and/or co-defendants the government reasonably believes has information helpful to the preparation of the defense; and

z.    The name and address and any written or oral statement made by any witnesses or co-defendants to the offense charged in the indictment whom the government does not intend to call as witnesses in this case.

6.      Due process, as the constitutional phrase has been interpreted, requires that the government not suppress evidence favorable to a defendant or discrediting to its own case, and, upon request, that it disclose to the defense all such information.  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976); *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177 (1942).  The requirement of disclosure extends to candor by the government witnesses as well as matters which relate more directly to guilt or innocence.  *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972); *Napue v. People of the State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959).  *See also, Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908 (1969).

7.      The *Brady* rule grew out of a realization by the Supreme Court that the defendant's abilities for acquiring evidence are disproportionate to those of the government.  Most defendants have neither the manpower nor the access and contacts available to the government in its investigation of crime.  Thus, the prosecution is obliged to share the proceeds of its discovery with the defense where that evidence is favorable to the latter's cause.  Indeed, the importance of *Brady* has been so strongly enforced that the Supreme Court, in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985), unequivocally extended the duty of disclosure to information which may be used by the accused for impeachment at trial.

## Time of Disclosure

8.      Effective preparation for trial is the cornerstone of effective representation of criminal defendants and disclosure of information which, in any of a variety of ways, impeaches the witness' credibility is consequently required <u>before</u> trial in order to enable effective preparation.  As the Court in *United States v. Pollack* pointed out:

> Disclosure by the government must be made at such a time as
> to allow the defense to use the favorable material effectively
> in  the  preparation  and  presentation  of  its  case,  even  if

8

satisfaction of this criterion requires pre-trial disclosure. [Citations omitted].

*United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

9.     The need for pre-trial disclosure of *Brady* material has been highlighted in several cases.  In *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993), irreconcilable discrepancies between the informer's actual record and government representations about the prior record indicated the informer had misled his government handlers.  The court vacated the conviction and remanded for an evidentiary hearing "to restore the parties" to their "pre-trial" position and to ascertain whether the informer had lied to the government.  989 F.2d at 336-337.  *See also, United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990), *cert. denied*, 498 U.S. 921, 111 S.Ct. 299 (1990) (a government file which contained impeachment material regarding a prosecution witness should have been produced "prior to" the witness' testimony); *Gorham v. Wainwright*, 588 F.2d 178 (5th Cir. 1979) (under certain circumstances, delayed revelation of discoverable evidence may deny a defendant an effective defense); *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979) (harm was done by the pre-trial failure of the government to disclose the whereabouts of the informant; crucial importance was given to pretrial opportunity to interview and/or investigate potential witness); *Grant v. Alldredge,* 498 F.2d 376, 381-382, n.5 (2d Cir. 1974) (failure of government to disclose before trial that bank teller picked out photograph of another individual was error); *United States v. Baxter, et al.,* 492 F.2d 150 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945 (1974) (delay in turning over requested favorable evidence is unconstitutional when delay in disclosure substantially prejudiced the preparation of the defense); *Clay v. Black*, 479 F.2d 319 (6th Cir. 1973) (per curiam) (pre-trial disclosure of an FBI scientific report would have permitted defense to establish necessary claim of custody to introduce certain blood stains); *United States v. Polisi*, 416 F.2d 573 (2d Cir. 1969) (the importance of *Brady* is to measure the effects of the suppression upon the defendant's preparation for trial); and *Hamric v.*

*Bailey*, 386 F.2d 390 (4th Cir. 1967) (to be effective, disclosure must be made at a time when disclosure would be of value to the accused).

10.     Numerous district courts have ordered such discovery both before and after the 1975 amendments to the Federal Rules of Criminal Procedure.  *See, United States v. Thevis, supra* (delaying disclosure of *Brady* materials useful for impeachment until the night preceding the testimony is insufficient); *United States v. Five Persons*, 472 F.Supp. 64 (D.N.J. 1979) (by adoption of a standard order, district judges declared that the rights to due process and a fair trial require availability of *Brady* material within 10 days after arraignment); *United States v. Goldman*, 439 F.Supp. 337 (S.D.N.Y. 1977) (if exculpatory evidence is produced for the first time at trial, defendant may not have an adequate opportunity to effectively utilize the material; all *Brady* material to be provided "immediately"); *United States v. Dillard*, 419 F.Supp. 1000 (N.D. Ill. 1976) (in light of complex decisions of strategy and preparation, it is better practice to require disclosure in advance of trial); *United States v. Quinn*, 364 F.Supp. 432 (N.D. Ga. 1973), *aff'd on other grounds*, 514 F.2d 1250 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1430 (1976) (*Jencks* Act timetable cannot control release of information to which defendant is constitutionally entitled).

11.     The due process requirements of disclosure are reinforced by a federal court's supervisory powers.  In this federal prosecution, this Court can ensure that justice is administered properly in the federal courts by requiring immediate disclosure of the information sought, including impeachment materials.

## Impeachment Evidence

12.     Mr. Rodriguez has itemized likely sources of impeaching information within the knowledge or reach of government counsel.  *United States v. Agurs, supra*.  Disclosure of this information is necessary in order for defense counsel to conduct an appropriate investigation and to

conduct interviews and otherwise prepare for such trial proceedings as jury selection, opening

statements and cross-examination.

13.    At issue, from an impeachment standpoint, are the general principles of crediting and

discrediting witnesses.  McCormick has identified "five main lines of attack upon the credibility of a

witness":

> The first, and probably the most effective and most frequently
> employed, is an attack by proof that the witness on a previous
> occasion has made statements inconsistent with his present
> testimony.  The second is an attack by a showing that the
> witness is partial on account of emotional influences such as
> kinship for one party or hostility to another, or motives of
> pecuniary interest, whether legitimate or corrupt.  The third is
> an attack upon the character of the witness.  The fourth is an
> attack by showing a defect of capacity in the witness to
> observe, remember or recount the matters testified about.  The
> fifth is proof by other witnesses that material facts are
> otherwise than as testified to by the witness under attack.

McCormick on Evidence §33, at 111-12 (4th ed. 1992) (footnotes omitted).

14.    Discovery should extend to production of so-called "rap sheets" of the witnesses as

well as any information concerning criminal conduct of prospective witnesses.  Indeed, in requiring

the production of this type of information, the Court in *United States v. Osorio*, 929 F.2d 753, 761 (1st

Cir. 1991), described the government's obligation as "a constitutionally derived duty to search for and

produce impeachment information  . . ."

15.    The Supreme Court has recognized ". . . that the individual prosecutor has a duty to

learn of any favorable evidence known to the others acting on the government's behalf in the case,

including the police." *Kyles v. Whitley*, 514 U.S. at 419, 115 S.Ct. at 1555 (1995).  The *Kyles* decision

was followed by the Second Circuit in *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("the

individual prosecutor is presumed to have knowledge of all information gathered in connection with

the government's investigation").  *Kyles* was also followed by the Ninth Circuit in *United States v.*

*Hanna*, 55 F.3d 1456 (9th Cir. 1995).  The *Hanna* Court vacated the conviction and remanded for an evidentiary hearing to explore "inconsistencies" between the arresting officer's testimony and his conversations with fellow officers.  *Id*. at 1460-1461.

16.    Mr. Rodriguez specifically requested the substance of any and all inducements, promises, compensation or consideration, broadly defined, which the government has held out to witnesses or which a witness subjectively anticipates to receive in exchange for testimony or assistance.

17.    The government has a constitutional obligation to disclose any and all consideration which is held out to a witness or which the witness subjectively hopes for and anticipates since such consideration directly gives rise to the inference of bias or interest.  *See, generally, United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977) (cross-examination of a prosecution witness who has had prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope [citation omitted];" conviction reversed).  *Id*. at 248.  A common example of such matter which must be disclosed to the defense is the making of promises or the holding out of other inducements for a witness to cooperate and testify against the defendant.  *See, e.g., United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977); *Annunziato v. Manson*, 566 F.2d 410 (2d Cir. 1977); *Boone v. Paderick*, 541 F.2d 447 (4th Cir.), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610 (1977); and *United States v. Tashman*, 478 F.2d 129 (5th Cir. 1973).

18.    The duty of the government to disclose this information is an affirmative one and the ignorance of one prosecutor as to promises made to a government witness by another prosecutor does not excuse the failure to disclose.  *Giglio v. United States, supra*.  The obligation to disclose includes the total compensation or benefits paid to or expected by each witness.  *United States v. Leja*, 568

F.2d 493 (6th Cir. 1977). The government must disclose both "the stick and the carrot," including threats to prosecute. *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976).

19. Numerous examples exist which make the principle of "consideration" clear. *United States v. Sutton, supra* (witness rendered a statement as an inducement to government informant); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979) (witness' attorney's fees paid by State of Florida); *United States v. DiCarlo*, 575 F.2d 952 (1st Cir. 1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115 (1978) (assistance in the business world); *United States v. Garza*, 574 F.2d 299 (5th Cir. 1978) (information provided would result in no other indictments, heroin conspiracy indictment dismissed, bond in prior conviction on appeal would be lowered); *United States v. Croucher*, 532 F.2d 1042 (5th Cir. 1976) (error to refuse defense counsel to cross-examine informer about prior arrests, other than ones resulting in convictions for felonies or misdemeanors involving moral turpitude); *United States v. Bonanno*, 430 F.2d 1060 (2d Cir. 1970), *cert. denied*, 400 U.S. 964 (1971) (failure to disclose outstanding indictment); and *Patriarca v. United States*, 402 F.2d 314 (1st Cir.), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633 (1969), *rehearing denied*, 393 U.S. 1124, 89 S.Ct. 987 (1969) (information provided would be brought to the attention of prosecution in other pending action; family assigned to protective custody). These examples, of course, are only intended to make the principle clear and do not exhaust the range of possibilities.

20. The defendant has moved for specific information regarding the prior occasions when each witness gave testimony or otherwise made statements relative to the facts in this action. Witnesses' statements which are at least, in part, exculpatory and/or important for impeachment should be produced. *United States v. Miller*, 529 F.2d 1125 (9th Cir. 1976), *cert. denied*, 426 U.S. 924, 96 S.Ct. 2634 (1976); *United States v. Quinn, supra; United States v. Five Persons, supra;* and *United States v. Thevis, supra.* Witnesses' statements or other information which has been recorded

on so-called 302 Forms by agents of the government which contain exculpatory material should also be disclosed. *Brady v. Maryland, supra.*

21.     Likewise, Mr. Rodriguez's request for the substance of all occasions known to the government on which an informer, accomplice or co-conspirator has previously testified, even if no direct relationship to the instant case is apparent, should be granted. A defendant should be afforded the widest possible latitude in investigation and cross-examination. In *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975), the point was clearly illustrated. There, a defendant was charged in an Iowa proceeding with a drug offense. The conviction was obtained with the involvement of a paid informer who had worked in such a capacity in other jurisdictions, including Michigan. In light of the witness' modus operandi and his desire to maintain a continuing relationship as an informant with the law enforcement agencies, and his bias, it was a denial of due process to have refused to provide the defendant access to the informant's testimony in an earlier proceeding involving a separate drug sale in Michigan. Similarly, it amounts to a denial of due process in this instance to refuse to provide the requested information in this case.

22.     It has also been held that where a government employee serves as a prosecution witness, the defendant is entitled to have access to his or her government personnel file in order to ascertain whether there is information within it which could be of impeaching nature. *United States v. Deutsch*, 475 F.2d 55, 58 (5th Cir. 1973), *rev'd on other grounds, United States v. Henry*, 799 F.2d 203 (5th Cir. 1984). Similarly, in *United States v. Morell*, 524 F.2d 550, 552-55 (2d Cir. 1975), the Court of Appeals held that defense counsel were entitled to impeaching information in the confidential file of an informant witness. *See also, United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946). As pointed out by one commentator, "This information is extremely valuable to the criminal or civil practitioner in thoroughly investigating and preparing any cases where the credibility of a police

officer is at issue." Snyder, Discovery of Police Personnel Files in Criminal Proceedings, 52 Fla. Bar.

J. 119, 122 (1979).

23.     In sum, the right of counsel for the accused to confront, cross-examine and impeach is cherished and remains the means by which "the scope and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105 (1974) (Burger, C.J.). Our specific requests for impeaching information are highly material for precisely this venerable mission. *See*, generally, *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979). Therefore, the prosecution should be ordered to disclose the requested information or to show good cause for their failure to comply. *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

24.     The decision by the Second Circuit in re United States (*United States v. Coppa*), 267 F.3d 132 (2d Cir. 2001) does not change or limit the District Court's ability to order pre-trial disclosure of *Brady* and impeachment evidence. Indeed, the Second Circuit in *Coppa* made clear that "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." *Coppa*, 267 F.3d at 146. In a multi-defendant, multi-conspiracy, multi-drug case such as this, sound case management requires early disclosure of impeachment and *Brady* material. *Cf. United States v. Ruiz*, 241 F.3d 1157 (9th Cir. 2001) (right to waive undisclosed *Brady* material cannot be waived through plea agreement), *cert. granted*, 122 S.Ct. 803 (2002).

25.     Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the defendant, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

26.     It is respectfully requested that the defense motion for pre-trial disclosure of all

*Brady* material be granted.

### III
### BILL OF PARTICULARS

27.     Pursuant to Rule 7(f) of the Rules of Criminal Procedure, the Defendant, Daniel

Rodriguez, demands a Bill of Particulars.

**Possession with Intent to Distribute Cocaine and Cocaine Base**

a.  The exact actions allegedly undertaken by Mr. Rodriguez that support the allegation that he was distributing narcotics.

b.  Who the alleged cocaine/cocaine base was sold to.

c.  Where this alleged sales took place, and its exact location.

d.  The exact time such sales took place.

e.  Whether "marked" monies were utilized by the government, and what denominations were used.

f.  The chain of custody that was utilized and all participants.

g.  The exact amount of alleged cocaine/ cocaine recovered/purchased.

h.  The date submitted by the police into evidence.

i.  The date submitted to laboratory for testing.

28.     Whether to grant a bill of particulars rests within the sound discretion of the district

court.  *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984).  A bill of particulars is

particularly important in complex cases, such as conspiracy cases covering an extended period of

time.  See, e.g., *United States v. Davidoff,* 845 F.2d 1151 (2d Cir. 1988).  The fact that evidentiary

details or the government's theory of the case may be revealed is insufficient reason to deny a

reasonable request for a bill of particulars.  *United States v. Greater Syracuse Board of Realtors*,

438 F. Supp. 376 (N.D.N.Y. 1977). *United States v. Calvi*, 830 F. Supp. 221 (S.D.N.Y. 1993), is instructive regarding both the necessity and the importance of a bill of particulars.

29.    An order directing filing of a bill of particulars in regard to this indictment would be inappropriate in view of the United States Attorney having responded to all other discovery requests of the defense, and no claim of inadequacy of that response having been made.

30.    The prosecution is in the best position to know in advance of trial whether any of its evidence is likely to produce surprise making it difficult for the defense to cross-examine the applicable witnesses or otherwise defend the case with full vigor.  If such a risk exists, it will be in the interest of the United States to furnish further information in advance of trial to avoid the need for a continuance during the trial to alleviate any adverse consequences which may flow from such surprise.

31.    Rule 7(f) of the Federal Rules of Criminal Procedure does not require the United States Attorney to furnish a three dimensional colored motion picture of the prosecution's proof prior to trial.  In the event that actual unfair surprise can be shown, an appropriate continuance may be considered.

> *Id.* at 223.  *Calvi* directly correlates the need for a bill of particulars with the amount of detail in the indictment. Although the reported decision in *Calvi* does not set forth the indictment *in toto*, the indictment there was obviously much more detailed than the indictment here, which does little more than track the statutory language over a period of years. Here, the Indictment is fairly characterized as "bare bones," and in order to adequately prepare a defense to these charges and for trial, the Court should order the government to file a bill of particulars providing the information.

**IV**
**PRE-TRIAL DISCOVERY**

32.    Federal Criminal Rule 12(b)(3) requires that any suppression motion be made before trial, and Federal Criminal Rule 12(d) requires that a court decide every pre-trial motion

before trial unless "good cause" exists to defer such a ruling.

33.     Federal Criminal Rule 16(a)(1)(E) further requires the disclosure of tangible items of evidence which are "material to preparing the defense."

34.     Daniel Rodriguez moves for the pre-trial disclosure of any evidence to be proffered under Rule 404(b) of the Federal Rules of Evidence.

## Rule 16 and Notice of Intention Pursuant to Rule 12.

35.     The government has provided some voluntary discovery, including police and laboratory reports.

36.     However, pursuant to Federal Rules of Criminal Procedure 16 (a)(1)(A)(B)(C) and (D), Mr. Rodriguez now moves to compel discovery of any items or information to which the defendant is entitled.  Specifically, this request includes:

(a)     copies of any and all records, including reports and/or logs, relating to the     alleged conspiracy and the arrest of all co-conspirators;

(b)     copies of all records, including reports and/or logs, regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation;

(c)     copies of any and all reports relating to the booking process in this case;

(d)     copies of any reports and/or test results relating to determination of drug quantity or type of drug;

(e)     copies of any and all photographs taken relating to this investigation;

(f)     copies of any and all documents and photographs seized on the day of any searches in this case;

(g)     inspection of all items seized from the defendant on the day of his arrest;

(h)     disclosure of the names and identities of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and reports, and the results of tests, examinations or

18

experiments which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at the trial;

(i)     a copy of any search warrant or arrest warrant applied for and/or issued or denied during the course of this investigation (whether state, federal or local); and

(j)     pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure, the defendant requests written notification of any evidence that the government intends to use in its case-in-chief that may, in any way, be subject to a motion to suppress and which the defendant is entitled to discover pursuant to Rule 16.

37.     Pursuant to Rule 16, Mr. Rodriguez requests that the government provide him with discovery as provided by that Rule, to the extent that they have not already done so.  Mr. Rodriguez notes that the government has provided the defense voluntary discovery. Nevertheless, this motion is brought to preserve the defendant's discovery rights.

38.      Rule 12(b) establishes a procedure for notifying a defendant of the government's intention to use certain evidence at trial.  The express purpose of this procedure is to afford an opportunity for submission of pre-trial motions seeking the suppression of such evidence [Rule 12(b)(1) and (2)].  Specifically, Rule 12(b)(4)(B) provides that at the defendants request, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), he may request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

39.     To the extent that the government complied with Rule 12(b), they need only so note on the disclosure notice.

40.     Therefore, pursuant to Rule 12(b), request is hereby made for the immediate disclosure by the government of a notice setting forth any evidence which the defendant may be

entitled to discover under Rule 16 which the government intends to utilize at trial, including, but not limited to:

## Expert Discovery

41.    Rule 16 of the Federal Rules of Criminal Procedure authorizes the discovery of a written summary of expert testimony to be proffered during the Government's case in chief, and

42.    Daniel Rodriguez specifically moves for compliance and disclosure to defense counsel of the written summary required by statute.

## Reports of Examinations and Tests

43.    Mr. Rodriguez respectfully demands disclosure of any and all results of any physical, mental and/or scientific examinations, tests and/or experiments within the prosecution's possession, custody and/or control which are either intended by the prosecution to be used as evidence in chief or which are material to the defense preparation and have not been previously provided.

## *Voir Dire* Government Experts
## Outside the Presence of the Jury

44.    Mr. Rodriguez moves the Court to issue an order allowing him to *voir dire* any proposed government experts at trial outside the presence of the jury.

45.    Rule 104 of the Federal Rules of Evidence states that preliminary questions regarding the competency of a person called as a witness "shall be determined by the Court."

46.    A defendant is entitled to challenge the competence of the government's proposed experts and the admissibility of his/her testimony. *See, In re Chicago Flood Litig.*, No. 93 C 1214, 1995 U.S. Dist. LEXIS 10305, at *27 (N.D. Ill. July 19, 1995) (when question raised regarding basis for proffered expert testimony, court permitted *voir dire* outside the jury's presence).

47.    A *voir dire* examination outside the presence of the jurors is the preferred method for determining the competency of an offered expert witness. *See, e.g., United States v. 68.94*

*Acres of Land*, 918 F.2d 389, 391 (3d Cir. 1990); *see also, e.g.*, *United States v. Snow*, 552 F.2d 165, 168 (6th Cir. 1977) (defense counsel examined government expert outside of presence of jury regarding qualifications); *United States v. Henson*, 486 F.2d 1292, 1303 (D.C. Cir. 1973) (en banc) (*voir dire* of government expert outside the presence of the jury).

48.    In the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside of the presence of the jury.

49.    Therefore, Mr. Rodriguez requests that he be permitted to *voir dire* any government expert or experts outside the presence of the jury, as to both competency and admissibility.

## Preservation of Law Enforcement Notes

50.    Daniel Rodriguez moves for an order requiring the preservation of all police agency and/or investigative notes that were generated during the instant investigation.  See *United States v. Gladstone*, 200 U.S. Dist. Lexis 17166 (S.D.N.Y.); *United States v. Cordero*, 1998 U.S. Dist. Lexis 4504 (N.D.N.Y.); *United States v. Dumm*, 1997 U.S. Dist. Lexis 1266 (N.D.N.Y.)

## Documents and Tangible Objects

51.    Mr. Rodriguez requests the following: (a) any tangible items within the government's possession, custody and/or control which the prosecutor intends to use as evidence in chief; (b)  any tangible items within the government's possession, custody and/or control which was obtained from the defendants or which belong to the defendants; (c) any tangible items within the government's possession, custody and/or control which is material to the preparation of the

defendant's defense; and (d) any and all recordings of any conversations which pertain to any of the facts alleged in the instant Indictment.

### *Jencks* **Material**

52.    Mr. Rodriguez respectfully requests disclosure of *Jencks* material (18 U.S.C. 3500) at least 60 days in advance of trial so as to permit its meaningful use by the defense.

53.    The government is obligated to disclose pursuant to 18 U.S.C. §3500, *Jenks v. United States,* (353 U.S. 657), and its progeny, so that the defendant may have an opportunity to adequately consider the same in preparing his cross-examination and preparing a defense.

54.    It is respectfully requested that the defense motion for discovery and inspection pursuant to Rule 16, and notice of intention be granted.

### **Defendant's Prior Record**

55.    Mr. Rodriguez hereby requests a copy of his prior criminal record, if any, as is within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

### V
### MOTION FOR AUDIBILITY HEARING

56.    Mr. Rodriguez moves the Court to hold an audibility hearing to determine whether any recordings that the government seeks to introduce at his trial are audible.  The government has not formally identified what recordings it will introduce at trial.  Once it does so, an audibility hearing should be held.

57.    As the Court is aware, if portions of any recording are unintelligible, and the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, the recording must be suppressed.  *See United States v. Arango-Correa*, 851 F. 2d 54, 58 (2d Cir. 1988); United *States v. Aisenberg*, 120 F. Supp.2d 1345 (M.D. Fla. 2000).  Therefore, in advance

of trial, the Court should conduct a hearing to determine the audibility of the recordings the government plans to introduce at trial.

## VI
## MOTION TO EXCLUDE STATEMENTS BY
## NON-TESTIFYING CO-CONSPIRATORS

58.      Pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and the Sixth Amendment to the United States Constitution, Mr. Rodriguez respectfully requests that the Court bar the admission into evidence of all post-arrest statements by non-testifying co-conspirators/co-defendants which may implicate him in any way.

59.      In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's Sixth Amendment right of cross-examination was violated when a non-testifying co-defendant's confession, implicating the defendant, was introduced at their joint criminal trial. *Bruton*'s protection of defendants' Sixth Amendment confrontation and cross-examination rights remains a linchpin of joint criminal trials.

60.      Although in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court approved the use of non-testifying co-defendant confessions where all reference to the defendant's existence are eliminated and a limiting instruction is used, the continued vitality of *Bruton* and broad protections of the Sixth Amendment were demonstrated by the Supreme Court's recent decision in *Gray v. Maryland*, 523 U.S. 185 (1998). There, the Court applied *Bruton* to a case where reference to the defendant's existence was eliminated in the confession, but deletions in the confession were marked with a blank or "deleted."  The Court found that the defendant's Sixth Amendment rights were violated.  *Cf. Lilley v. Virginia*, 527 U.S. 116 (1999) (admission of non-testifying accomplice's confession violated Confrontation Clause).

61.      Because he has not received discovery of any post-arrest statements by co-

conspirators or co-defendants, Mr. Rodriguez cannot know whether the government will seek to use such evidence against him, or even if such statements exist. Therefore, Mr. Rodriguez makes this motion to exclude any such statements, and requests leave to amend and supplement it, and to file an additional memorandum of law or memorandum in support, after he has received full discovery and can apply the applicable authorities to the facts presented.

a.   A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial. *See United States v. DeGroote*, 122 F.R.D. 131, 137-39 (W.D.N.Y. 1988) (collecting cases); *United States v. Feola*, 651 F. Supp. 1068, 1133-34 (S.D.N.Y. 1987), *aff'd.*, 875 F.2d 857 (2d Cir. 1989) (mem.);

b.   The specific times, dates and locations when and where Mr. Rodriguez and other co-conspirators combined and agreed to possess with intent to distribute the controlled substance in question;

c.   Where "elsewhere" the co-conspirators allegedly conspired;

d.   How the co-conspirators, including Mr. Rodriguez, knowingly, willfully and unlawfully combined, conspired and agreed together to possess with intent to distribute the controlled substances in question;

e.   List all uncharged overt acts taken by the co-conspirators, including Mr. Rodriguez;

f.   List the exact weight of all controlled substances that Mr. Rodriguez allegedly conspired with co-conspirators to possess with intent to distribute, and the date(s) on which he conspired to possess each amount of cocaine;

g.   Whether or not any individual present during the commission of any alleged overt acts was acting for the government, and the names, or names then used or similar identification, or any such person;

h.   The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

i.   The dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date. *See United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989);

*United States v. DeGroote*, 122 F.R.D. 131 (W.D.N.Y. 1988); *United States v. Scott*, 93-CR-26E (W.D.N.Y. 1994); and

j.     The quantity of controlled substance distributed and possessed by the defendant and each co-conspirator to the extent that this information will be presented by the government at trial.

## VII
## MOTION FOR REVELATION OF IDENTITY OF INFORMANTS

62.     Defendant Rodriguez hereby moves this Court, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution, for an Order requiring the government to disclose the following information:

a.     The identity of any and all informants possessing information which may be material to defendant's alleged guilt or innocence;

b.     The identity of any and all informants who were present at any of the events which are described in the instant indictment; and

c.     Any and all government reports containing information received from any informant referenced above which may be material to the instant case.

63.     This motion is made on the grounds that the informants are percipient witnesses to the allegations contained in the instant indictment, and may also possess exculpatory and exonerating information.  With respect to item (c), Mr. Rodriguez requests these reports on the ground that, to the extent he has been unable to review reports containing factual information relayed by that informant, he has been unable to lay proper factual foundation for the disclosure of the informant.  At a minimum, defendant seeks to have all reports described above submitted in camera to the Court for review and subsequent disclosure to counsel.  In the event that the Court does not compel disclosure of this information and the identities of the informants, defendant respectfully requests that all government reports be sealed and made part of the record in the instant case.

## The Government is Obliged to Disclose the Identity and Whereabouts of Informants and to Make Them Available to the Defense.

64.     In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957), the United States Supreme Court held that whenever an informant's testimony may be relevant and helpful to the accused's defense, his or her identity must be revealed.  The *Roviaro* Court set forth the following general standard for disclosure:

> Where the disclosure of an informant's identity or the contents of his communications is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must be waived.  In these situations, the trial court may require disclosure and, if the government withholds the information, dismiss the action.

*Roviaro v. United States, supra*, 353 U.S. at 60-61.

65.     The Court made clear that, while there is no fixed rule with respect to disclosure, four considerations are relevant:   (1) the crime charged; (2) the possible defenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors.

66.     The "relevant and helpful" language of *Roviaro* has been interpreted by the Second Circuit "to require disclosure when it is material to the defense."  *DiBlasio v. Keane*, 932 F.2d 1038, 1041-1042 (2d Cir. 1991).  The *DiBlasio* Court recognized that:

> The judge must consider a number of factors in determining whether the informant's testimony is material:   "the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors."

*Citing*, *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555 (1989), *quoting*, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957).

67.     Similarly, the Ninth Circuit requires disclosure of the identity of an informant when he or she is a percipient witness.  Thus, in *United States v. Cervantes*, the Court recognized that a

"percipient witness" must be disclosed.  *United States v. Cervantes*, 542 F.2d 773, 775 (9th Cir. 1976)

(en banc).  The same result was reached in *United States v. Hernandez*:

> In light of [the informant'[s] role in the narcotics transaction with which appellants were charged, it cannot be said that disclosure of Smith's identity would not have been "relevant or helpful" to the appellant's defense . . .  Because [the informant] was a participant in the events that were critical to the prosecution's case, no claim could be raised under *Roviaro*, nor was it raised, that [the informant's] identity could be lawfully withheld from the appellants.  [Citations omitted].

*United States v. Hernandez*, 608 F.2d 741, 744-745 (9th Cir. 1979); *see also*, *United States v. Miramon*, 443 F.2d 361, 362 (9th Cir. 1971).

68.     The law is also clear that where an informant's testimony is essential to a fair determination, the government may be required to disclose his identity and address, if any.  *United States v. Roberts,* 388 F.2d 646 (2d Cir. 1968).  *See also, United States v. Anderson*, 509 F.2d 724 (9th Cir. 1975) (within the court's discretion to compel disclosure even when use of the informant goes only to probable cause).  Further, the need for disclosure and production of the informant is mandated when the indictment contains a conspiracy charge and the informant could have information regarding either knowing membership in the conspiracy or possible entrapment.  *United States v. Mormon, supra; Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966).

69.     Obviously, it is not defendant Rodriguez's burden to prove what the informant would actually say if disclosed since the informant's unavailability makes that burden impossible to discharge in all cases.  *See, e.g., United States v. Mormon, supra*, where disclosure should have been made because the informant "might have corroborated the (defendant's story)."  *Id*. at 362.  As stated by the Court in *United States v. Day, supra*:  "No matter how inert his role of participation he might still possess information relevant to a fair determination of the issues".

70.     As to all informants, the defense is entitled to a revelation of their whereabouts and addresses prior to trial so that sufficient investigation into their background can be made.  As stated by the Court in *United States v. Hernandez, supra*:

> We recognize that the address of a principal witness, as [the informant] most assuredly was, is an integral element of identity for without such information, little meaningful inquiry can be made into the background information affecting credibility.

*United States v. Hernandez*, 608 F.2d 741, at 745 (9th Cir. 1979).

71.     In this case, therefore, the location and present whereabouts of any and all informant[s] must be immediately disclosed so that an investigation may be made into the credibility and background of the informant[s] prior to trial.  Further, any purported government assertion that there is some unspecified danger to informant[s] is insufficient to justify withholding the information concerning his or her whereabouts.  As *Hernandez* makes clear, the decision concerning potential "danger" must be made only after an evidentiary hearing.  *Hernandez, supra*, 608 F.2d at 745, fn.3.

72.     Finally, the government's obligation is not fully satisfied by merely disclosing the identity and location of the informant[s].  The defense here specifically requests that the informant[s] be produced.  The Ninth Circuit has held that the government has an obligation to "accomplish this or show that, despite reasonable efforts, it was not able to do so".  *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (en banc).  *See also, United States v. Cervantes, supra; Velarde-Villa Real v. United States*, 354 F.2d 9 (9th Cir. 1965).

73.     For the reasons cited above, it is apparent that each of the informant[s] in this case is a material witness.  The government should be ordered to disclose the identity of that witness and his or her whereabouts, and to make those witnesses available to the defense.  Failure to do so would require dismissal of the case.

## Upon a Proper Showing, the Defendant is Entitled
## to Pre-Trial Access to Prosecution Witnesses.

74.     Mr. Rodriguez recognizes that the general rule is that in a non-capital case, the accused has no constitutional right to require production of the names and addresses of prospective witnesses.  *See, e.g., United States v. Cole*, 449 F.2d 194, 198 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991 (1972).   However, it should be noted that this rule is suffering from increasing erosion.  For example, in *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973), the Second Circuit held that it was reversible error to deny pre-trial disclosure of the identity of a witness to the defendant's similar criminal conduct.  *See also, United States v. Allstate Mortgage Corp.*, 507 F.2d 492 (7th Cir. 1974) (rule of *Baum* adopted and approved).  Moreover, an order requiring pretrial disclosure of government witnesses is a proper exercise of judicial authority. *See, United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973) (affirming the authority of the trial court to order pre-trial discovery of prospective government witnesses); *United States v. Jackson,* 508 F.2d 1001, 1006-1007 (7th Cir. 1975) (a trial court can enter and order *sua sponte* and without a showing of materiality requiring pre-trial disclosure of prospective government witnesses.

75.     The United States Supreme Court first addressed the disclosure of government witnesses in *Alford v. United States*:

> Cross-examination of a witness is a matter of right.  Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought tending to discredit the witness by showing that his testimony in chief as untrue or biased. . . .  Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.  [Citations omitted].

*Alford v. United States*, 282 U.S. 687, 688, 51 S.Ct. 218, 219 (1931).

76.     Subsequently, in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748 (1967), the Supreme Court reconsidered the rule of *Alford v. United States* and held that the failure to disclose the address of a primary prosecution witness was a denial of the defendant's Sixth Amendment right to confront and cross-examine witnesses.  The Court stated:

> The witness' name and address open countless avenues of in-court examination and out-of-court investigation.   To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

Id. at 750.

77.     Therefore, it is the defendant's position that an accused has the right to know the identity and location of prospective government witnesses so that he may interview them prior to trial in order to put such witnesses in proper setting for purposes of credibility and cross-examination.

78.     Based, then, on the reasons cited above, it is respectfully requested that the identity and location of the prospective government witnesses be disclosed and that they be produced by the government prior to trial.

79.     Disclosure of informant information in this prosecution is essential to a fair determination of the charges filed against the defendant.  Much of what the government's evidence in this case appears to be is based on cocaine trafficking that in no way is tied to the defendant. Mr. Rodriguez is entitled to know whether these government informants, who are criminals based on their actions in purchasing drugs and participants in and witnesses to criminal activity – have any knowledge of whether Mr. Rodriguez was involved in alleged criminal activity.

80.     In addition, the defense demands the following information about all informants:

    a.      All evidence affecting the issues of bias or credibility;

    b.      Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir.

1980);

    c.    All promises or consideration of any kind given to the informants, *Giglio v. United States*, 405 U.S. 150 (1972);

    d.    Identification of the informants' prior testimony, *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975);

    e.    Evidence of psychiatric treatment of each informant or cooperating witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983);

    f.    Evidence of the informants' narcotic habits, *United States v. Fowler*, 465 F.2d 664 (D.C. Cir. 1972);

    g.    Whether the informants are being compensated, including favorable plea agreements, in return for their cooperation with the government. *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975); and

    h.    A review of the informant file kept by the authorities for each informant.

81.    The inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility. *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972). Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril." *United States v. Bernal-Obeso,* 989 F.2d 331 (9th Cir. 1993). For these reasons, the identities and information requested above should be disclosed by the government to Mr. Rodriguez.

## Witness Statements

82.    Under 18 U.S.C. § 3500 (the "Jencks Act"), a defendant is entitled to witness statements after the witness has completed his or her testimony on direct examination. This Court has, on a case-by-case basis, invoked its discretion to require production of Jencks Act statements in advance of the trial so that unnecessary delays will not take place during the course of the trial.

83.    Mr. Rodriguez requests the Court to order the government to deliver to counsel immediately, but in no event not later than four weeks prior to the date of the trial, the following:

    a.    any statement, however taken or recorded, or a transcription thereof, if any, made by the witness(es) to a grand jury;

    b.    any written statement made by a witness that is signed or otherwise;

    c.    adopted or approved by the witness;

    d.    any stenographic, mechanical, electrical or other recording transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement;

    e.    any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local and other investigations whether or not the contents thereof have been incorporated in official records;

    f.    any notes and memoranda made by government counsel during the interviewing of any witness intended to be called by the government in its direct case.  *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and

    g.    all surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 73 (2d Cir. 1932).

84.    In addition to avoiding unnecessary delays, sufficient pretrial delivery of *Jencks* material also insures that the defendant's fundamental rights to a fair trial and due process are safeguarded.

## VIII
## SEARCH AND SEIZURE

85.    It is counsels understanding that the evidence to be offered at trial consists of or was derived from the "fruits" of a search and/or seizure authorized by virtue of a judicial and/or administrative search warrant.

86.     In light of the fact that such evidence was derived from the "fruits" of a judicial and/or administrative search warrant as referred to above, request is made for:

        a.    a copy of each such search warrant;

        b.    a copy of each written search warrant application together with any supporting affidavit(s);

        c.    a copy of each voice recording, stenographic transcript and/or longhand record with respect to any oral search warrant application;

        d.    a copy of any search warrant inventory return;

        e.    the exact time and date when the United States government entered into the investigation of the defendant or any co-defendant relative to the instant matter; and

        f.    whether the United States Government, including any police officials or United States prosecutors, had any involvement in the instant case, including communication or correspondence with Canadian officials at the time any search warrants were issued.

87.     In the event that any evidence was acquired in the fashion(s) referred to above, request is made for any item consisting of, derived from and/or purporting to memorialize the "fruit" of any search and/or seizure.

## IX
## IDENTIFICATION

88.     Mr. Rodriguez requests notification of whether any evidence to be offered at trial relates to or is derived from an identification of defendant's person, voice, handwriting, his picture and/or a composite sketch purporting to embody his facial features.

89.     In the event that any such evidence will be offered at trial, a statement is requested setting forth the following:

        a.    the exact date, time and place where the identification proceeding occurred; and

        b.    the substances of the identification proceeding to include the names of all persons present thereat.

90.     If any such evidence to be offered at trial relates to non-corporeal identification proceedings, request is made for access to any and all pictures, sketches, voice exemplars, and/or handwriting specimens utilized during the course of any such identification proceeding.

## X
## MOTION TO SUPPRESS STATEMENTS

91.     On September 11, 2020, a vehicle that Mr. Rodriguez was a passenger in was stopped by the Town of Tonawanda Police.   After the vehicle was stopped officers approached the vehicle and directed Mr. Rodriguez to exit.   Mr. Rodriguez did so without incident, he was then handcuffed and walked over to the front of a police car.

92.     Upon information and belief, Mr. Rodriguez was then questioned about a homicide that occurred in August of 2019.   Mr. Rodriguez denied having any knowledge regarding the alleged homicide.   At some point, while being questioned Mr. Rodriguez saw his girlfriend being removed from the vehicle and allegedly made further statement.   It also appears that a statement may have been made by Mr. Rodriguez while he was in the back of a police vehicle.

93.     The defense has been provided two C.P.L. 710.30 notices that were prepared by the Town of Tonawanda Police.   (**Exhibit A.**)   Those documents contradict, not only, each other but also supplemental police report #129 which was also provided to the defense

94.     Counsel is left to wonder when and where the statements were taken, which statement was made first and when/if *Miranda* rights were administer.

95.     Consequently, we move to suppress all of the statements attributed to Mr. Rodriquez and/or a hearing be conducted to determine whether the statements made by Mr. Rodriguez were knowingly and voluntarily provided.

## XI
## MOTION FOR LEAVE TO MAKE OTHER MOTIONS

96.     Mr. Rodriguez respectfully moves the Court for an order allowing him to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands.

97.     The specific requests contained in these motions are not meant to limit or preclude future requests by the defendant for further relief from this Court as appropriate.  The reason additional motions should be allowed is that filing these motions at this time would not be an efficient use of the Court's and the parties' time and resources, as many of these motions may not be necessary based on what evidence the government does or does not intend to introduce at trial, or by other pre-trial developments in this case.  Additionally, other motions may be required depending on the Court's rulings on the motions made *supra* and other information or documents disclosed by the government.

98.     Specifically, Mr. Rodriguez reserves the right to make the following motions at an appropriate time in the case, in addition to other motions that may be appropriate: 1) motions *in limine* related to evidence the government, Mr. Rodriguez or co-defendants intend(s) to introduce at trial; 2) *ex parte* motion pursuant to Federal Rule of Criminal Procedure 17(b)/(c) for an order allowing the pretrial production of documents; 3) motion pursuant to Federal Rule of Criminal Procedure 15(a) for pre-trial deposition of a witness; 4) motion for pre-trial production of government summaries pursuant to Federal Rule of Evidence 1006; 5) motion for a supplemental jury questionnaire or for counsel participation in *voir dire*; 6) motion for additional peremptory challenges; 7) Federal Rule of Criminal Procedure Rule 29 motions at trial; 8) motion for various

non-pattern jury instructions; and 9) motion to controvert search warrant. Additionally, Mr. Rodriguez reserves his right to move to dismiss the indictment.

99. For the foregoing reasons, the Court should issue an Order permitting Mr. Rodriguez to make other motions as requested above.

100. The defense has endeavored to encompass within these motion papers all forms of pre-trial relief that may be properly requested at this time.

101. However, upon the receipt of materials and/or information in the future, counsel may become aware of further pre-trial relief which should be requested or matters which should be advanced to supplement the motions already made. The Court is respectfully asked to grant leave to make such other and further motions and to supplement these motions as may be deemed appropriate at a future date.

WHEREFORE, deponent respectfully requests that this Court grant the relief sought in the attached Notice of Motion, together with such other and further relief as the Court deems proper.


DATED:  January 15, 2021
           Buffalo, New York

                                        Respectfully submitted,

                                        /s/Justin D. Ginter
                                        JUSTIN D. GINTER, ESQ.
                                        LIPSITZ GREEN SCIME CAMBRIA, LLP


Subscribed and sworn to before me this
15th day of January, 2021.

/s/Alexander E. Basinski
Notary Public, State of New York
Qualified in Erie County
My Commission Expires August 6, 2022