**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────

**UNITED STATES OF AMERICA,**

                                        **Plaintiff,**

  **v.**

                                                                **20-CR-150V**

**DANIEL RODRIGUEZ,**

                                        **Defendant.**

───────────────────────────

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Lawrence J.
Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and
report upon dispositive motions.

## PRELIMINARY STATEMENT

        The defendant, Daniel Rodriguez ("the defendant") is charged along with a
co-defendant in a multi-count superseding indictment charging him with having violated
21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), 856(a)(1) and 18 U.S.C. §§ 924(c)(1)(A)(i)
and 922(g)(1) and 924(a)(2).   Dkt. #50.   He has filed a motion wherein he seeks
suppression "of all statements attributed to [him]."   Dkt. #19, p. 34, ¶ 95).   He has also
filed a "supplemental motion to controvert search warrant" (Dkt. #43) wherein he seeks
suppression of "any evidence derived from the search warrants (sic) or any evidence

obtained or at (sic) the result of the execution of the unlawful search warrants (sic) also be suppressed."   Dkt. #43, pp. 5-6, ¶ 18.   The government has filed its opposition to these motions.   Dkt .#s 20, 44.

Because an issue of fact was created by the defendant, wherein he asserted in his affidavit (Dkt. #27) that he does "not believe [he] was provided *Miranda* warnings prior to the officers questioning [him] on scene" (Dkt. #27, p. 2, ¶ 15), this Court held an evidentiary hearing on the issue on July 7, 2022 and a transcript of the proceedings was filed on August 4, 2022.   Dkt. #72.   Post-hearing memoranda were filed by the government and the defendant.   Dkt. #s 77 and 78, respectively.   The matter was then taken under advisement.

## **FACTS**[1]

On September 8, 2020, detectives of the Town of Tonawanda Police Department obtained a search warrant from the Hon. Kenneth Case, Erie County Court Judge, which authorized the search of the defendant's person, a Jeep Cherokee vehicle and the residence of the defendant located at 120 Center Street in the City of North Tonawanda.   Government Exhibit 1.   T. 8-9.   This search warrant was obtained as

---

[1] The facts are taken from the transcript of the testimony given at the evidentiary hearing conducted on July 7, 2022 and referenced by "T" followed by the appropriate page number(s).   Dkt. #72.

part of a homicide investigation being conducted by Detectives Campanella, Muscoreil and Scranton.   T. 7-8, 26.

On September 11, 2020, the search warrant was executed by the stopping of the Jeep Cherokee vehicle in which the defendant was a passenger and thereafter searching the vehicle and the person of the defendant.   T. 13-14, 29-30.   After the Jeep Cherokee vehicle was stopped, Detective Scranton approached the driver's side of the vehicle and spoke to the driver, who is the girlfriend and co-defendant of the defendant, and advised her of the search warrant for the vehicle.   T. 14-15.   At this time, Detective Muscoreil removed the defendant from the passenger side of the vehicle and he and Detective Campanella took the defendant back to the area of their detective's vehicle.   T. 16, 32, 43.   Detective Muscoreil had placed the defendant in handcuffs.   T. 60, 74-75.   Detective Campanella gave *Miranda* warnings and an advice of rights to the defendant.   The defendant acknowledged that he understood his rights, and after being asked by Detective Campanella if he would speak to them about the homicide they were investigating, the defendant agreed to speak to them about it.   T. 41-42, 49, 61-62, 75-76.   Detective Campanella then asked a number of questions of the defendant about the homicide and shortly thereafter, the defendant stated that he didn't want to talk about it anymore.   Thereupon, Detective Campanella walked away from the defendant and returned to the Jeep Cherokee vehicle.   T. 42, 46-47, 48, 62-63, 76.

The driver of the Jeep Cherokee told Detective Scranton that anything found in the vehicle was the defendant's and indicated to him that there were drugs in the back of the vehicle.   T. 17.   Detectives Scranton and Campanella went to the rear of the vehicle and opened the rear hatch and began a search of the vehicle.   This was observed by Detective Muscoreil and the defendant since they were standing facing the Jeep Cherokee , and at that time, the defendant told Muscoreil that "everything that [they] were going to find in the vehicle was his."   T. 64-65.   Detective Muscoreil asked the defendant "if it was guns or drugs" and the defendant "said it was drugs."   T. 65.   Nothing more was said at this time by the defendant or Detective Muscoreil and the defendant was placed in a North Tonawanda police patrol car.   T. 18, 47, 65.   The search of the Jeep Cherokee resulted in the finding and seizure of a quantity of narcotics in the back of the vehicle.   T. 17.

When Detective Scranton began walking back to his detective vehicle, a North Tonawanda police officer advised him that the defendant wished to speak to him. The defendant was sitting in the back seat of a police patrol car and the window was lowered.   Detective Scranton approached the patrol car and the defendant asked him if they were going to search his residence to which Scranton replied "yes" and that they had a search warrant authorizing the search of the defendant's residence.   T. 18-19, 48-49.   Thereupon, the defendant stated to Scranton that anything they were going to find at the residence was his.   When asked if there were drugs, the defendant said yes and told Detective Scranton "that in a jacket of his was another quantity of drugs."   T.

4

18-19.   A subsequent search of the defendant's residence pursuant to the search

warrant authorizing the same resulted in the finding and seizure of additional quantities

of drugs, including some found in the defendant's jacket as he had indicated.   T. 19.


## DISCUSSION AND ANALYSIS


At the evidentiary hearing, the government presented Detectives Mark

Scanlon and Mark Muscoreil as witnesses along with a number of government exhibits.

The defendant did not present any witnesses and chose not to testify.   Instead, he has

relied on his affidavit which was submitted in support of his motion to suppress.   *See*

Dkt. #27.   No exhibits on behalf of the defendant were offered or received.


This Court observed the demeanor of each of the government's witnesses

as they testified, and having heard the testimony, I find both Detectives Scanlon and

Muscoreil to be credible and accept their testimony as being truthful.


Since the defendant did not testify at the evidentiary hearing, his assertion

in his affidavit that he does "not believe [he] was provided *Miranda* warnings prior to the

officers questioning [him] on scene" could not be tested either by cross examination or

corroborated by the Court's observance of his demeanor.   As a result, his denial

assertion in his affidavit is lacking in specifics and not entitled to any great weight and

5

can be disregarded as being self-serving without undergoing the rigors of cross examination.   *United States v. Thompson*, 2010 W.L. 3069668 (S.D.N.Y.); *United States v. Lucas*, 338 F. Supp.3d 139, 145 (W.D.N.Y. 2018).   Cross examination "is the greatest legal engine ever invented for the discovery of the truth."   *California v. Green*, 399 U.S. 149, 158 (1970).

### A.   Defendant's Statement to Detective Muscoreil

Detective Muscoreil testified that he observed and heard Detective Campanella[2] give *Miranda* warnings and advice of rights to the defendant while all three were standing in the area of their detective vehicle.   He further testified that the defendant acknowledged that he understood those rights and warnings.   After acknowledging such, Detective Muscoreil heard Detective Campanella ask the defendant if he would speak to them about a homicide investigation[3] they were conducting to which the defendant replied that he would.   T. 41-42, 47-48, 61-63, 75-76.   Detective Campanella then asked the defendant a number of questions about the homicide they were investigating and subsequently the defendant stated that he did not want to talk about the homicide any further.   The detectives honored this statement of the defendant by ceasing the interrogation and Detective Campanella walked away to join Detective Scranton at the Jeep Cherokee.   T. 62-63, 76.   Detective Muscoreil maintained custody of the defendant in the area of the detective's vehicle and engaged

---

[2] Detective Campanella is retired from the Town of Tonawanda police force.   T. 55.
[3] The defendant's former girlfriend had been murdered in her home on August 27, 2019.

in general, social, sports conversation with the defendant.   T. 63.   He did not conduct

an interrogation of the defendant at that time.   Rather, the defendant initiated a

conversation with Detective Muscoreil when they were observing the search of the Jeep

Cherokee by telling him that "everything that [they] were going to find in the vehicle was

his."   T. 64-65.   This was a spontaneous statement by the defendant and not elicited

through police interrogation.   It was in response to the defendant's volunteered

statement that Detective Muscoreil asked the defendant "if it was guns or drugs" and the

defendant replied that it was "drugs."   T. 65.   When the defendant made his voluntary,

spontaneous statement to Detective Muscoreil, he waived his *Miranda* warnings and

advice of rights by reinstating his conversation with the detective.   *United States v.*

*Gonzalez*, 764 F.3d 159, 166 (2d. Cir); *cert. denied* 574 U.S. 998 (2014).


> An express written or oral waiver of constitutional rights is
> not necessary to establish a knowing and voluntary waiver of
> such rights.   *North Carolina v. Butler*, 441 U.S. 369, 373, 99
> S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).   A valid waiver
> may be inferred "from the actions and words of the person
> interrogated."   *Id*.; *United States v. Rubio*, 709 F.2d 146, at
> 152 (2d Cir. 1983); *United States v. Boston*, 508 F.2d 1171,
> 1175 (2d Cir. 1974), *cert. denied*, 421 U.S. 1001, 95 S.Ct.
> 2401, 44 L.Ed.2d 669 (1975).

*United States v. Silva,* 715 F.2d 43, 49 (2d Cir. 1983).


The United States Supreme Court has expressly stated:

> Echoing the standard first articulated in Johnson v Jerbst,
> 304 US 458, 464, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357
> (1938), Miranda holds that "[t]he defendant may waive
> effectuation" of the rights conveyed in the warnings

7

> "provided the waiver is made voluntarily, knowingly and intelligently."   384 US, at 444, 475, 16 L Ed 2d 694, 86 S Ct 1602, 10 Ohio Misc 9, 36 Ohio Ops 2d 237, 10 ALR3d 974. The inquiry has two distinct dimensions.   Edwards v. Arizona, supra, at 482, 68 L Ed 2d 378, 101 S Ct 1880; Brewer v Williams, 430 US 387, 404, 51 L Ed 2d 424, 97 S Ct 1232 (1977).   First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.   Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.   Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Fare v Michael C., 442 US 707, 725, 61 : Ed 2d 197, 99 S Ct 2560 (1979).   See also North Carolina v Butler, 441 US 369, 374-375, 60 L Ed 2d 286, 99 s Ct 1755 (1979).

*Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995).

In considering the totality of the circumstances as established in the testimony of Detectives Scranton and Muscoreil, I find that the defendant knowingly and voluntarily waived the *Miranda* warnings and advice of rights that had previously been given to him by Detective Campanella and that he was not subjected to unlawful interrogation by Detective Muscoreil when he followed up on the defendant's statement by asking "if it was guns or drugs" that would be found in the Jeep Cherokee.

It is also pointed out that the facts and circumstances in this case, *i.e.*, a homicide investigation and illegal drugs, created a valid application of the public safety

8

exception relative to the *Miranda* rule.    As a police officer investigating a homicide

wherein the victim was shot, Detective Muscoreil certainly had a reasonable and

legitimate concern that there may be weapons in the Jeep Cherokee and thus his

inquiry of the defendant in that context was lawful and not in violation of *Miranda* or the

defendant's Fifth Amendment rights.

> In *New York v. Quarles*, the Supreme Court identified a
> "narrow exception to the Miranda rule," when arresting
> officers ask a defendant "questions necessary to secure their
> own safety or the safety of the public."    467 U.S. at 658-59,
> 104 S.Ct. 2626.    Recently reiterating this principle in *United
> States v. Reyes*, this court observed that "Miranda warnings
> need not precede 'questions reasonably prompted by a
> concern for the public safety' or for the safety of the arresting
> officers" for a suspect's answers to be admitted as evidence
> of his guilt.    353 F.3d at 152 (quoting *New York v. Quarles*,
> 467 U.S. at 656, 104 S.Ct. 2626).    The public safety
> exception to Miranda does not depend upon the subjective
> motivation of the questioning officer.    *See Quarles*, 467 U.S.
> at 655-56, 104 S.Ct. 2626.    Rather, it applies so long as the
> questioning "relate[s] to an objectively reasonable need to
> protect the police or the public from any immediate danger."
> *Id.* at 659 n. 8, 104 S.Ct. 2626; accord *United States v.
> Reyes*, 353 F.3d at 154.

*United States v. Newton*, 369 F.3d 659, 677-78 (2d Cir. 2004); *see also United States v.

Estrada*, 430 F.3d 606, 612 (2d Cir.2005); *United States v. Simmons*, 661 F.3d

151,157(2d Cir.2011).

In *United States v. Reyes*, 353 F.3d 148 (2d Cir. 2003), the court

expressed the basis for the exception to the *Miranda* rule wherein it stated:

9

> We emphasize, as did the Supreme Court, that the purpose
> of the public safety exception is to allow officers "to follow
> their legitimate instincts when confronting situations
> presenting a danger to the public safety."   *Quarles*, 467 U.S.
> at 659, 104 S.Ct. 2626.   There has to be some flexibility in
> situations where the safety of the public and the officers are
> at risk.

*Id.* at 155; s*ee also United States v. Ferguson, 702 F.3d 89 (2d Cir. 2012), cert. denied

571 U.S, 830 (2013); United States v. Shea*, 150 F.3d 44, 48 (1st Cir. 1998); *United

States v. Talley*, 275 F.3d 560, 563-65 (6th Cir. 2001); *United States v. Ferguson*, 702

F.3d 89 (2d Cir. 2012)*, cert. denied* 571 U.S. 830 (2013).


### B.   Defendant's Statement to Detective Scranton


It was only after Detective Scranton had been advised by a North

Tonawanda police officer that the defendant wished to speak to him that Detective

Scranton approached the police patrol car in which the defendant had been placed.   T.

17-18.   The patrol officer rolled down the back window of the patrol car so Detective

Scranton could speak with the defendant.   This event occurred after Detective

Campanella had previously given *Miranda* warnings and advice of rights to the

defendant.   T. 42, 48.


Once again, the defendant initiated the conversation with Detective

Scranton by asking him if police were going to search his residence.   T. 18-19.   When

Detective Scranton told him that they were going to do so because they had a search

warrant, the defendant spontaneously said that "anything [they were] going to find at the house is mine."   T. 18-19.

Since Detective Scranton had just finished searching the Jeep Cherokee and found a quantity of drugs in the vehicle, it was reasonable for him to ask the defendant if "it is drugs" that they would find in the house to which the defendant responded "yes" and then went on to tell Detective Scranton that there was a quantity of drugs in his jacket at the residence.   T. 18-19, 48-49.

Once again, I find that the defendant knowingly and voluntarily waived the *Miranda* warnings and advice of rights that had previously been given to him by Detective Campanella and that he was not subjected to unlawful interrogation by Detective Scranton when he told Detective Scranton that drugs would be found in his residence and, more specifically, in a jacket of his which was in the residence.   *United States v. Gonzalez, supra*; *United States v. Silva, supra*; *Moran v. Burbine*, *supra*.

The defendant's claim that the evidence found in the defendant's jacket constituted "fruit of the poisonous tree" is totally without merit.   (*See* Dkt. #78, p. 9). The detectives obtained a search warrant authorizing the search of the defendant's residence on September 9, 2020, which was well prior to the events of September 11, 2020 at the scene of the stopped Jeep Cherokee.   *See* Government Exhibit 1.   A search of the defendant's residence pursuant to that warrant would have inevitably

11

resulted in the discovery of the drugs in the defendant's jacket.   Therefore, the exclusionary rule does not apply in this instance.   *Nix v. Williams*, 467 U.S. 431 (1984); *United States v. Eng*, 997 F.2d 987, 990 (2d Cir. 1993); *United States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006).

Since the law enforcement officers legally had the right to enter the defendant's residence pursuant to the search warrant, they also had the right to seize evidence covered by that search warrant as well as contraband such as drugs.   As the United States Supreme Court has stated, it is well settled that "it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband."   *United States v. Jacobsen,* 466 U.S. 109, 121-122 (1984); *Illinois v. Caballes*, 543 U.S. 405, 410 (2005).   The drugs found in the defendant's jacket in his residence constitute contraband and therefore subject to legal seizure by law enforcement officers.

### C.   The Defendant's Motion to Controvert Search Warrant

The defendant argues that because the search warrant affidavit of Detective Campanella only "describes the events [homicide and burglary] of August 27, 2019 which took place at 111 Ebling Avenue and [the defendant's] alleged location near 111 Ebling Avenue based on cell-site location information," and because the defendant

12

"began renting 120 Center Ave. approximately one week before the search warrant application was filed," there is no "nexus between the suspected criminal activity and [the defendant's] address."   Dkt. #43, p. 5, ¶s 12-13.   Thus, the defendant argues, "the search warrant lacks probable cause in all respects" and that "any evidence derived from the search warrants (sic) or any evidence obtained or as the result of the execution of the unlawful search warrants (sic) [must] also be suppressed."   Dkt. #43, pp. 5-6, ¶s 17-18.

Detective Campanella submitted a nine (9) page typewritten affidavit in support of the application for a search warrant for the defendant's residence at 120 Center Avenue, the Jeep Cherokee and the person of the defendant to the Hon. Kenneth F. Case, Erie County Court Judge.   Dkt. #44-1.   In that affidavit, he describes in detail the investigation that had been conducted to date relating to the homicide of the defendant's former girlfriend and the burglary at her residence on August 27, 2019. Part of this investigation consisted of technology that enabled law enforcement officers to establish that the defendant was in the vicinity of 111 Ebling Avenue, the victim's residence, around the time that the victim was shot and killed and her property stolen. Law enforcement officers also found "firearm evidence" consisting of shell casings and bullets in the victim's residence.   The officers were also able to determine that the victim's cell phone and her jewelry were missing from the victim's residence and that her cell phone had been "suddenly deactivated at the time of the homicide."   Dkt. #44-1, p. 9, ¶ 39.   Based on the homicide investigation and the determinations made by law

enforcement as set forth in Detective Campanella's affidavit, Judge Case found that there was probable cause for the issuance of a search warrant authorizing a search of the defendant's person, residence and vehicle and the seizure of evidence as described in the search warrant which he issued on September 9, 2020.   Dkt. #44-1, p. 2.

In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.   And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] "that probable cause existed.   (citation omitted).   We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983); *United States v. Boles*, 914 F.3d 95, 102-103 (2d Cir.), *cert. denied* 139 S.Ct. 2659 (2019).

As the Court of Appeals for the Second Circuit stated:

> A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden.   "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate

> has found probable cause, the courts should not invalidate
> the warrant by interpreting the affidavit in a hypertechnical,
> rather than a commonsense, manner. . . .  [T]he resolution
> of doubtful or marginal cases in this area should be largely
> determined by the preference to be accorded to warrants."
> *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741,
> 746, 13 L.Ed.2d 684 (1965). And the duty of a reviewing
> court is simply to ensure that the magistrate had a
> "substantial basis for . . . conclud[ing]" that probable cause
> existed.
>
> *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332,
> 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362
> U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see*
> *United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir.
> 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Even if a warrant is determined to have been issued without probable

cause, the heavy toll of suppression of evidence is warranted only to deter deliberate,

reckless or grossly negligent conduct by law enforcement. *Id., quoting Herring v. United*

*States*, 555 U.S. 135, 144 (2009). When a law enforcement officer genuinely believes

that he has obtained a valid warrant and executes that warrant in good faith, there is no

conscious violation of the Fourth Amendment to justify exclusion of evidence. *Id*.,

*quoting United States v. Leon*, 468 U.S. 897, 921 (1984).

Therefore, I find that the defendant has failed in his burden to invalidate

the search warrant issued by Judge Case on September 9, 2020.

**CONCLUSION**

Based on the foregoing, it is hereby recommended that the defendant's motion to suppress the use of the statements made by him on September 11, 2020 to Detectives Muscoreil and Scranton and his motion to suppress the use of evidence seized at his residence on September 11, 2020 pursuant to a search warrant be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

16

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:     Buffalo, New York
           December 16, 2022

                                        *S/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

17